1

HONORABLE RONALD B. LEIGHTON

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8

9

10

11

| | |
|---|---|
| In re | USDC CASE NO. C10-5156-RBL |
| RONNIE L. REGISTER<br>CARRIE L. REGISTER, | Bankruptcy No. 08-44241-PBS |
| Debtors. | Internal Appeal No. 10-T002 |

12

13

14

15

16

17

| | |
|---|---|
| HIGHLINE CAPITAL CORP., | Adversary No. 08-04138 |
| Appellant, | |
| v. | MEMORANDUM OPINION |
| RONNIE L. REGISTER<br>CARRIE L. REGISTER, | |
| Appellees. | |

18

THIS MATTER comes before the Court on appeal from a Memorandum Decision,

19

Findings of Fact, Conclusions of Law and Order Granting Discharge entered by the Bankruptcy

20

Court for the Western District of Washington on February 19, 2010.  Appellant filed a Statement

21

of Election to have this appeal heard by the District Court rather than the Bankruptcy Appellant

22

Panel (BAP), pursuant to General Rule 7 of the United States District Court for the Western

23

24

- 1

1   District of Washington.  This Court has jurisdiction to hear this appeal pursuant to 28 U.S.C.

2   § 158(a).

3         The Court has reviewed the materials submitted by the parties and, where appropriate,

4   has reviewed excerpts of the record.  Except as noted below, the facts are not disputed.  The

5   statements of the law are likewise not controverted.  Following a bench trial before the

6   Bankruptcy Judge, it was ordered that the debt owed by Debtors to Highline Capital Corp. as

7   Assignee of the debt from Americorp was dischargeable.

8         Appellant raises two issues on appeal:

9     1.  Should the trial court's conclusion that the debtors did not intend to deceive by their

10        false personal financial statement be reversed?

11     2.  Should the trial court's conclusion that the lender did not reasonably rely on the false

12        financial statement be reversed?

13         The parties are familiar with the facts of this case and they will not be repeated here.  The

14   case ultimately turns on the trial court's finding that Gary Barnett was the agent of the original

15   lender and that the debtors were honest with him.  Information conveyed to Barnett was deemed

16   received by the lender.  The appellant here, as assignee of the original lender (assignor), stands in

17   the shoes of the assignor and is bound by what was known by the original lender and its agent,

18   Gary Barnett.

19                  **STANDARD OF APPEALLATE REVIEW**

20         In an action brought under 11 U.S.C. 253(a)(2)(B), the trial court's findings of fact are

21   reviewed under the clearly erroneous standard, but conclusions of law are entitled to de novo

22   review.  *In re Candland*, 90 F.3d 1466, 1469 (9th Cir. 1996).

23

24

MEMORANDUM OPINION - 2

1     A finding of fact is clearly erroneous when, although there is evidence to support it, the

2   reviewing court, on the evidence, is left with the definite and firm conviction that a mistake has

3   been committed.  *In re Drehsen*, 190 B.R. 441, 442 (M.D. Fla. 1995).

4     Whether a claim is nondischargeable is reviewed for gross abuse of discretion.  *In re*

5   *Smith*, 242 B.R. 664, 669.  The "gross abuse" standard is the same as reviewing findings of fact

6   for clear error and reviewing conclusions of law de novo.  *Id.*  Review under the clearly

7   erroneous standard is significantly deferential, requiring a "definite and firm conviction that a

8   mistake has been committed."  *Id.*  If the district court's account of the evidence is plausible in

9   light of the record viewed in its entirety, the court of appeals may not reverse it even though

10  convinced that had it been sitting as the trier of fact, it would have weighed the evidence

11  differently.  *Id*. At 700.

12                                    **DISCUSSION**

13    The finding of fact critical to the trial court's decision states that "[a]lthough Barnett was

14  not an agent of Highline, the uncontradicted evidence indicates that Barnett held himself out as

15  an agent of the original lender."  Memorandum Decision, 6-7.  Evidence supporting that

16  conclusion comes from the testimony of the debtors, as well as the finance agreement between

17  Americorp Financial, LLC (original lender) and the debtors' corporation (a personal guaranty

18  was also signed) on June 28, 2005 and a letter dated September 22, 2005 thanking the debtors for

19  their business and signed by Gary Barnett as Vice President of Sales for Americorp Financial,

20  LLC.

21    This evidence, coupled with the testimony that Mr. Barnett was later removed from the

22  list of recommended lenders given by Figaro's Italian Pizza to prospective franchises when

23

24

1   Figaro's determined that he was no longer reliable, clearly affected the court's credibility

2   assessment of the witnesses.

3           The trial court found the debtor's testimony to be credible on each of the creditor's

4   examples of intent to defraud.  All information relied upon by the creditor to prove intent to

5   deceive comes from a June 6, 2005 financial statement prepared by Gary Barnett and signed by

6   the debtors.  This financial statement was admittedly different from the handwritten financial

7   statement prepared in February by the debtors.  The earlier, handwritten financial statement

8   showed about one-half of the net worth that the Barnett-prepared statement showed.  The

9   creditor established that the February financial statement resulted in the denial of the loan

10  application, but the trial court believed the debtors' testimony that Barnett told them the loan was

11  approved.  In response, they then signed a Lease Agreement and Personal Guaranty on the real

12  property and a Bill of Sale for the business equipment, expending more than $5,500 in deposits

13  and down payments.

14          The creditor argues that the June 2005 financial statement prepared by Barnett failed to

15  state that the debtors had personally guaranteed lease payments on the franchise premises, and

16  failed to disclose the amount of that obligation.  The evidence showed, and the trial court

17  believed, that Ronnie Register advised Gary Barnett at some point after the execution of the lease

18  that the debtors had personally guaranteed the lease.  Since the debtors believed they were

19  already approved for the loan, they did not pay close attention to the representations made by

20  Barnett in their stead in the June 2005 up-dated financials.

21          The creditor argues that the June 2005 financial statement failed to disclose that debtors

22  had a contingent offer to buy a home in Battle Ground, provided they could sell their home in

23  Sedro Wooley.  That purchase did not close until August 2005, but was contingent as of the

24

MEMORANDUM OPINION - 4

1  signing of the June financial statement.  The trial court found credible the debtors' testimony that

2  Ronnie Register disclosed to Gary Barnett their intent to purchase a new home, and that Barnett

3  advised them that this information did not need to be disclosed because the sale had not yet

4  closed and they currently had no mortgage.

5         The creditor reserves its strongest criticism for the court's acceptance of debtors'

6  explanation of why their June financial statements overstated income and understated expenses

7  to increase their net worth.  The trial court accepted the debtors' explanation that the statement of

8  annual income was for the previous year (calendar year 2004) and therefore included Ronnie

9  Register's income from his Taco Time job, which he had quit to start his new business.  The trial

10  court noted that the February financial statement, handwritten by debtors, did disclose to Barnett

11  that Ronnie Register was going to manage the pizza business and that only Carrie Register was

12  to keep her employment at an annual salary of $48,000.00.  The Court found the debtors'

13  testimony credible particularly because the financial statement form itself was ambiguous.

14  Section 4 of the Form was titled "Annual Income for Year Ended," and the specific year is left

15  blank.  In February and June 2005, the "year ended" was 2004.

16         The creditor argues persuasively that the June 2005 financial statement chose 2004 to

17  state income but chose the year 2005 to state expenses, all to bolster net worth.  The

18  inconsistency, arguably, is itself evidence of debtors' chicanery.  The bankruptcy judge found the

19  debtors, as unsophisticated consumers, to be credible witnesses.  The lease guaranty for the pizza

20  store was disclosed, as evidenced by the lender's attempt to secure a "landlord waiver" prior to

21  executing the finance agreement.  The lender was in direct contact with the landlord and

22  guarantees for lease payments are every bit as common as personal guarantees for business

23  loans.

24

1       Another contingent liability left off the June 2005 financial statement prepared by Barnett

2 and signed by the debtors was the contingency of mortgage payments on the house at Battle

3 Ground.  Mr. Register testified that he told Barnett of the intent to purchase a new home, and that

4 Barnett advised the debtors that they did not need to disclose that intent because the sale had not

5 yet closed and they had no existing mortgage debt.  The trial court believed the debtors and again

6 focused on the inherent ambiguity of the financial statement form.

7       Finally, the creditor argues that the overstatement of cash on hand was evidence of an

8 intentional or reckless misstatement.  The February statement prepared by debtors showed cash

9 on hand of $58,000.  The June statement revealed more cash and an anticipated inheritance from

10 Register's father's estate in the amount of $280,000.  What was not revealed was that much of

11 the new wealth was already spoken for because of the new house. Again, the court found the

12 debtors' testimony to be credible on the subject of the house purchase and the timing of receipt

13 of the inheritance.

14       With regard to all the misstatements found in the June 2005 financial statement, the trial

15 court found it probable that they originated with Barnett, the agent of the lender, and not with the

16 debtors.  Given the totality of the circumstances, it is more than plausible that Gary Barnett was

17 more interested in pursuing the business than he was in pursuing the truth.   If this court had

18 heard the testimony and reviewed the evidence, it may have ruled differently, but no fault can be

19 found in the conclusions of the court once the credibility determinations were made.  If Gary

20 Barnett was an agent of the lender, and the court believed the testimony of the debtors, there is

21 ample evidence to support the conclusion that debtors did not make false representations <u>with the</u>

22 <u>intention of deceiving the creditor</u> as required under 11 U.S.C. § 523(a)(2)(B).  The creditor's

23

24

MEMORANDUM OPINION - 6

1  case law submitted to the Court fails to address the situation here, where the lender's agent

2  prepared the false financial statement.  It is therefore inapposite.

3          As the Court has resolved the first issue in favor of appellees, it need not resolve the

4  second issue of reliance and declines to do so.  The rationale stated above is more than sufficient

5  to support the decision of the trial court, and that decision is **AFFIRMED**.

6          Dated this 15th day of March, 2011.

7

8

9          RONALD B. LEIGHTON
           UNITED STATES DISTRICT JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24